# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

NILSON MADRID-MARTINEZ )
(BOP Register No. 46044-177), )
 )
     Movant, )
 )
V. ) No. 3:18-cv-712-K
 ) (No. 3:13-cr-113-K-1)
UNITED STATES OF AMERICA, )
 )
     Respondent. )

## MEMORANDUM OPINION AND ORDER

Movant Nilson Madrid-Martinez, a federal prisoner, filed a *pro se* motion to

vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. *See* Dkt. Nos. 1 & 2.

The government filed a response, *see* Dkt. No. 8, and Madrid filed a reply brief, *see* Dkt.

No. 9. The Court now **DENIES** the Section 2255 motion for these reasons.

## Applicable Background

The United States Court of Appeals for the Fifth Circuit, in its decision affirming

the Court's judgment, set out the applicable background.

> [Madrid] pleaded guilty unconditionally … to being a felon in
> possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and
> 924(e)(1). He was apprehended by United States Immigration Customs
> and Enforcement Officers responding to information that an aggravated
> felon lived at a particular residence in Dallas. The officers received
> consent to enter and search the residence, and detained Madrid to
> determine his identity, alienage, and deportability. After waiving his
> Miranda rights, Madrid acknowledged: five firearms found in the
> residence belonged to him; and he was present in the United States
> unlawfully, after having been previously deported.
>
> He was charged with three criminal counts and moved the court to

suppress the evidence against him. After his motion was denied, Madrid pleaded guilty to the firearm-possession charge, and the Government dropped the remaining charges. The presentence investigation report (PSR) recommended a base offense level of 33 based on, inter alia, the conclusion that Madrid qualified as an armed career criminal, pursuant to 18 U.S.C. § 924(e) and Sentencing Guideline § 4B1.4(b)(3)(B). Madrid objected to the PSR recommendations, but the court overruled his objections and sentenced him to 180 months' imprisonment.

*United States v. Madrid-Martinez*, 695 F. App'x 743, 744-45 (5th Cir. 2017) (per curiam).

Madrid raises two claims in his Section 2255 motion. He first challenges, under *Johnson v. United States*, 135 S. Ct. 2551 (2015), the sentencing enhancement he received under the Armed Career Criminal Act ("ACCA") based on his prior convictions for burglary of a habitation under Texas Penal Code § 30.02 [Grounds One, Two, and Three]. And he claims that his trial counsel violated his right to affective assistance of counsel under the Sixth Amendment [Ground Four].

## Legal Standards and Analysis

I.      The ACCA Enhancement

As recounted in *Johnson*,

Federal law forbids certain people – such as convicted felons, persons committed to mental institutions, and drug users – to ship, possess, and receive firearms. § 922(g). In general, the law punishes violation of this ban by up to 10 years' imprisonment. § 924(a)(2). But if the violator has three or more earlier convictions for a "serious drug offense" or a "violent felony," the [ACCA] increases his prison term to a minimum of 15 years and a maximum of life. § 924(e)(1); *Curtis Johnson v. United States*, 559 U.S. 133, 136 (2010). The Act defines "violent felony" as follows:

"any crime punishable by imprisonment for a term exceeding one year ... that –

> "(i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or
>
> "(ii) is burglary, arson, or extortion, involves use of explosives, *or otherwise involves conduct that presents a serious potential risk of physical injury to another*." § 924(e)(2)(B) (emphasis added).
>
> The closing words of this definition, italicized above, have come to be known as the Act's residual clause.

135 S. Ct. at 2555-56 (citation modified).

In *Johnson*, the United States Supreme Court held "that imposing an increased sentence under the residual clause of the [ACCA] violates the Constitution's guarantee of due process." *Id.* at 2563. The decision thus "affected the reach of the [ACCA] rather than the judicial procedures by which the statute is applied" and therefore is "a substantive decision and so has retroactive effect under *Teague[ v. Lane*, 489 U.S. 288 (1989),] in cases on collateral review." *Welch v. United States*, 136 S. Ct. 1257, 1265 (2016). But *Johnson* did "not call into question application of the Act to the four enumerated offenses, or the remainder of the Act's definition of a violent felony." 135 S. Ct. at 2563; *see, e.g., United States v. Moore*, 711 F. App'x 757, 759 (5th Cir. 2017) (per curiam) (After *Johnson*, "[a] violent felony is one of a number of enumerated offenses or a felony that 'has an element the use, attempted use, or threatened use of physical force against the person of another.'" (quoting 18 U.S.C. § 924(e)(2)(B))).

Thus, the success of Madrid's *Johnson* claim turns on finding that Texas burglary is broader in scope than the burglary offense enumerated in the ACCA. That was an open question following *Johnson* until just recently. As a panel of the Fifth Circuit

recounted in *United States v. Wiese*, 896 F.3d 720 (5th Cir. 2018),

> in 2003, when Wiese was convicted of being a felon in possession, all of
> § 30.02(a) was considered generic burglary under the enumerated offenses
> clause of ACCA. *See United States v. Silva*, 957 F.2d 157, 162 (5th Cir.
> 1992); *see also United States v. Stone*, 72 F. App'x 149, 150 (5th Cir. 2003)
> (per curiam) (citing *Silva*, 957 F.2d at 161-62). That we held five years
> later that § 30.02(a)(3) is not generic burglary, *United States v. Constante*,
> 544 F.3d 584, 587 (5th Cir. 2008) (per curiam), or that we held earlier
> this year that § 30.02(a) is indivisible, *[United States v. Herrold*, 883 F.3d
> 517, 529 (5th Cir. 2018) (en banc)], is of no consequence to determining
> the mindset of a sentencing judge in 2003. Indeed, *Herrold*'s state law
> analysis that undergirded the divisibility determination was largely based
> upon a Texas Court of Appeals case decided five years after the sentencing
> in this case. *See Herrold*, 883 F.3d at 523, 525 (citing *Martinez v. State*,
> 269 S.W.3d 777 (Tex. App. – Austin 2008, no pet.)). Thus, at the time
> of sentencing, there was absolutely nothing to put the residual clause on
> the sentencing court's radar in this case.

*Id.* at 725; *see also United States v. Hernandez*, 779 F. App'x 195, 200 (5th Cir. 2019)

(per curiam) ("[T]he demonstrated trend before *Constante* was to treat all of Texas

Penal Code § 30.02(a) as generic burglary." (footnote omitted)).

It is clear now, however, that Madrid cannot show prejudice—and thus prevail—

on a *Johnson* claim based on Texas burglary. *See Brecht v. Abrahamson*, 507 U.S. 619, 638

(1993); *United States v. Chavez*, 193 F.3d 375, 379 (5th Cir. 1999) (applying *Brecht* in

a Section 2255 proceeding); *see, e.g., Monroe v. United States*, No. 3:16-cv-1693-G-BK,

2019 WL 1930139, at *3 (N.D. Tex. Apr. 9, 2019) ("[E]ven if the sentencing Court

had relied on the ACCA's residual clause—thus implicating *Johnson*—Monroe cannot

demonstrate prejudice because as the law currently stands, his two Texas aggravated

assault convictions are still viewed as crimes of violence under the force clause."

(citations omitted)), *rec. adopted*, 2019 WL 358509, at *1 (N.D. Tex. Jan. 29, 2019);

*Garcia-Hernandez v. United States*, 915 F.3d 558, 560 (8th Cir. 2019) ("Garcia-Hernandez has at least three qualifying convictions under current law. Resentencing would not change his ACCA enhancement, so any *Johnson* error was harmless." (citations omitted)).

Last term, the Supreme Court handed down two ACCA-enumerated burglary decisions—*United States v. Stitt*, 139 S. Ct. 399 (2018), and *Quarles v. United States*, 139 S. Ct. 1872 (2019)—and, in light of the latter, the Supreme Court vacated, remanding for further consideration, the Fifth Circuit's initial en banc decision in *Herrold*, which held that the Texas burglary statute was indivisible (and thus a conviction under the statute is not the same as a generic burglary conviction as enumerated in the ACCA). And "[o]n remand, the Fifth Circuit, citing *Quarles* and *Stitt*, held Texas's burglary statute under section 30.02(a) is indivisible and falls within the definition of generic burglary under the ACCA." *Montena v. United States*, Nos. 3:16-cv-1839-M-BT & 3:10-cr-353-M-BT, 2019 WL 6830435, at *2 (N.D. Tex. Nov. 15, 2019) (citing *United States v. Herrold*, 941 F.3d 173 (5th Cir. 2019) (en banc)); *see Herrold*, 941 F.3d at 182 ("Before *Quarles* and *Stitt*, we held that the Texas burglary statute is nongeneric 'because it criminalizes entry and subsequent intent formation rather than entry *with* intent to commit a crime.' Herrold's old arguments no longer avail and his new ones lack merit. We hold that Section 30.02(a)(3) is generic—and Herrold's three prior felonies are therefore qualifying predicates for a sentence enhancement under the ACCA." (footnote omitted)).

The Court therefore denies Madrid's first claim for relief.

II.     Ineffective Assistance of Counsel

The Court reviews claims of ineffective assistance of counsel under the two-prong test established in *Strickland v. Washington*, 466 U.S. 668 (1984), under which a movant must demonstrate that the performance of his attorney fell below an objective standard of reasonableness, *see id.* at 687-88. To be cognizable under *Strickland*, counsel's error must be "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687; *see also Buck v. Davis*, 137 S. Ct. 759, 775 (2017) (reaffirming that "[i]t is only when the lawyer's errors were 'so serious that counsel was not functioning as the "counsel" guaranteed ... by the Sixth Amendment' that *Strickland*'s first prong is satisfied" (citation omitted)).

The movant also must prove that he was prejudiced by his attorney's substandard performance. *See Strickland*, 466 U.S. at 687, 692. "This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687. And

> because of the risk that hindsight bias will cloud a court's review of counsel's trial strategy, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy."

*Feldman v. Thaler*, 695 F.3d 372, 378 (5th Cir. 2012) (quoting *Strickland*, 466 U.S. at 689).

"A conscious and informed decision on trial tactics and strategy cannot be the

basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness." *Cotton v. Cockrell*, 343 F.3d 746, 752-53 (5th Cir. 2003). Moreover, "[j]ust as there is no expectation that competent counsel will be a flawless strategist or tactician, an attorney may not be faulted for a reasonable miscalculation or lack of foresight or for failing to prepare for what appear to be remote possibilities." *Harrington v. Richter*, 562 U.S. 86, 110 (2011).

To demonstrate prejudice, a movant generally "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. Thus, "the question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently." *Richter*, 562 U.S. at 111. "Instead, *Strickland* asks whether it is 'reasonably likely' the result would have been different," which "does not require a showing that counsel's actions 'more likely than not altered the outcome,' but the difference between Strickland's prejudice standard and a more-probable-than-not standard is slight and matters 'only in the rarest case.'" *Id.* at 111-12 (quoting *Strickland*, 466 U.S. at 693, 696, 697). "The likelihood of a different result must be substantial, not just conceivable." *Richter*, 562 U.S. at 112.

Madrid argues that his trial counsel was constitutionally ineffective "for allowing [him] to waive his complaint about the denial of his 'Motion to Suppress' by inducing

[him] to enter into an unconditional guilty plea." Dkt. No. 2 at 9. And he explains in his brief that counsel advised him that "she believed that the motion to suppress would not be successful" and told him his two options were to plead guilty to a single count of conviction or proceed to trial on all counts. Dkt. No. 3 at 24; *see also id.* at 30-32 (attached as an exhibit a March 18, 2014 letter to Madrid from his counsel setting out this advice in English and Spanish). Madrid contends that his guilty plea "was invalid and coerced because [he] did not understand the nature of the constitutional protection that was being waived and didn't understand the charges against him" and that counsel should "have had [him] sign a plea agreement preserving his right to challenge on appeal" his suppression motion. *Id.* at 25.

> It is well established that a criminal defendant's right to effective assistance of counsel under the Sixth Amendment extends not just to trial or sentencing but to "the negotiation of a plea bargain," as it "is a critical phase of litigation for the purposes of the Sixth Amendment right to effective assistance of counsel*." Padilla v. Kentucky*, 559 U.S. 356, 373 (2010). As such, "[w]hen considering whether to plead guilty or proceed to trial, a defendant should be aware of the relevant circumstances and the likely consequences of his decision so that he can make an intelligent choice." *United States v. Rivas-Lopez*, 678 F.3d 353, 356-57 (5th Cir. 2012).

*United States v. Scribner*, 832 F.3d 252, 257-58 (5th Cir. 2016) (per curiam).

*Strickland*'s "two-part standard [applies] to ineffective-assistance claims arising out of the plea process." *Hill v. Lockhart*, 474 U.S. 52, 58 (1985). Objective reasonableness remains the standard by which a court should measure counsel's performance, but showing prejudice in this context turns "on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." *Id.*

at 58-59. And, as Madrid pleaded guilty, to establish prejudice under *Strickland*, he "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59.

Madrid's conclusory allegations fail to make this showing—that, had he understood that he was waiving his right to appellate review of the suppression ruling, he would have rejected that plea offer and instead proceeded to trial. This failure is fatal to his Sixth Amendment claim. Madrid also fails "to allege that going to trial would have given him a reasonable chance of obtaining a more favorable result. That omission is [also] fatal to his claim." *King v. Davis*, 898 F.3d 600, 605 (5th Cir. 2018) (establishing *Strickland* prejudice in the plea context "requires showing not only that the petitioner would have gone to trial, but also 'that going to trial ... would have given him a reasonable chance of obtaining a more favorable result.'" (quoting *United States v. Shepherd*, 880 F.3d 734, 743 (5th Cir. 2018))).

The Court therefore denies Madrid's second claim for relief.

## Conclusion

The Court **DENIES** Movant Nilson Madrid-Martinez's motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255.

**SO ORDERED.**

Signed January 8th, 2020.


*Ed Kinkeade*

ED KINKEADE
UNITED STATES DISTRICT JUDGE